[No. 15863.   Department Two.—February 5, 1895.]

# H. R. CRANE, APPELLANT, v. PACIFIC BANK, RE-SPONDENT.

INSOLVENT BANK—BANK COMMISSIONERS' ACT—ATTACHMENT FOR MONEY DEPOSITED—DISSOLUTION.—The assets of an insolvent bank are to be administered exclusively under the Bank Commissioners' Act for the benefit of all the depositors and creditors of the bank, as well as its stockholders; and where a commercial bank has suspended and closed its doors, owing to insolvency in fact, the right of attachment by a depositor or creditor of the bank does not exist, and such an attachment will be dissolved although levied before the machinery of the Bank Commissioners' Act was put in motion by the commencement of an action by the people.

ID.—MOTION TO DISSOLVE ATTACHMENT—EVIDENCE—JUDGMENT DECLARING BANK INSOLVENT—PLEADINGS.—Upon a motion to dissolve an attachment against an insolvent bank, a suit by the people under the Bank Commissioners' Act under which the court has adjudged the bank insolvent is admissible in evidence, and is conclusive for all the purposes of the action, and binding upon the attaching creditor, so far as concerns his right to maintain his attachment; and the pleadings in the action are properly read upon the motion, for the purpose of showing that the judgment was rendered in a case within the statute.

APPEAL from an order of the Superior Court of the City and County of San Francisco dissolving an attachment.

The facts are stated in the opinion.

*A. Barnard, Thomas V. Cator,* and *W. H. Hutton,* for Appellant.

The attachments having been levied more than thirty days before the commencement of the action by the people under the Bank Commissioners' Act, the lien of the attachments was not dissolved. (Beach on Receivers, sec. 202; Drake on Attachments, 7th ed., sec. 425; *Arnold* v. *Weimer,* 40 Neb. 216; *Hubbard* v. *Hamilton Bank,* 7 Met. 340; Morawetz on Private Corporations, 2d ed., sec. 864; *Life Assn.* v. *Fassett,* 102 Ill. 315; *In re Glen Iron Works,* 20 Fed. Rep. 674; *Peck* v. *Jenness,* 7 How. 612, 626; *Franklin Bank* v. *Bachelder,* 23 Me. 60; 39 Am. Dec. 611; *Vermont Marble Co.* v. *Superior Court,* 99 Cal. 581.)

*Sawyer & Burnett, Dunne & McPike,* and *W. T. Baggett,* for Respondent.

The right to an attachment does not exist where there is security for the debt. (Code Civ. Proc., sec. 538; *Hill* v. *Grigsby,* 32 Cal. 59, per Sanderson, J.; *Porter* v. *Brooks,* 35 Cal. 210.) The capital stock and assets of the corporation are security to depositors who are not stockholders. (Stats. of 1862, p. 199.) The bank is in liquidation under the Bank Commissioners' Act, and the judgment of the superior court relates to the time the bank became insolvent, which was prior to the attachments. (*National Bank* v. *Colby,* 21 Wall. 609; *National Shoe & Leather Bank* v. *Mechanics' Nat. Bank,* 89 N. Y. 467; *Central Nat. Bank* v. *Richland Nat. Bank,* 52 How. Pr. 136.) Under the Bank Commissioners' Act the affairs of the bank are to be liquidated, or, in other words, adjusted by applying all of its assets to the payment of its indebtedness, and therefore the attachments were properly dissolved so that all creditors could share equally. (*Attorney General* v. *Continental Life Ins. Co.,* 53 How. Pr. 22; *National Bank* v. *Colby,* 21 Wall. 609. See *People* v. *Superior Court,* 100 Cal. 105.)

HAYNES, C.—Appeal from an order dissolving an attachment.

On the tenth day of August, 1893, the plaintiff brought his action in the superior court of the city and county of San Francisco to recover from the defendant, a banking corporation, a certain sum alleged to have been deposited with it as a commercial deposit, and, on the same day, procured a writ of attachment to issue in said action, and which was on the same day levied upon assets of said bank sufficient to cover his claim.

On November 17, 1893, the defendant served upon plaintiff notice of a motion to dissolve said attachment " upon the ground that the attachment was improperly issued and levied, and on the ground that said attachment is dissolved by operation of law by reason of the transaction of unsafe business, and the insolvency and

CVI. CAL.—5

suspension of business by said Pacific Bank, defendant, prior to the issuance of said attachment, and by reason of the judgment of said superior court, duly made and entered, that it was unsafe for said bank to continue business, and that said bank was insolvent, and enjoining said bank from transacting business."

Said motion was based upon affidavits served therewith, and upon the records and papers in said superior court in the action entitled *The People etc.* v. *Pacific Bank, No. 42,863.*

The affidavit of A. Gerberding read in support of said motion shows, in substance, the following facts:

That from January 5, 1891, he was a member of the state board of bank commissioners; that the defendant was incorporated in 1863 under an act of the legislature, entitled "An act to provide for the formation of corporations for the accumulation and investment of funds and savings," approved April 11, 1862, under the name and style of the "Pacific Accumulation and Loan Company," with a capital stock of one million dollars; that in 1886 the name of said corporation was changed to that of the "Pacific Bank" under an act of the legislature approved March 31, 1866, authorizing it to change its name; that said corporation closed its doors for business and wholly suspended payment of its debts, dues, and liabilities on the twenty-third day of June, 1893, and has not since resumed payment; that on said last-mentioned day said bank held in trust for persons, partnerships, and corporations an aggregate fund amounting to about one million eight hundred and sixty-eight thousand and forty-one dollars and forty-five cents; that prior to said last-mentioned day said bank commissioners examined said bank and found that it had been guilty of a violation of law in conducting business contrary to its articles of incorporation in an unsafe manner, and so as to seriously jeopardize the capital, property, and business of the bank, and thereupon directed it by an order addressed to it to discontinue such illegal and unsafe practices, and to conform to the requirements of its

charter, but that the bank refused and neglected to comply with said order; that on said twenty-third day of June, 1893, the indebtedness of said bank was largely in excess of the reasonable and actual value of its assets; that the entire capital stock, together with the surplus, had become completely exhausted, and that the directors and stockholders neglected and refused to pay in said depleted stock or any part of it, and "that on said twenty-third day of June, 1893, said Pacific Bank was wholly insolvent and remains so insolvent"; that the commissioners reported the condition of the bank to the attorney general, as required by law; that said attorney general commenced an action in the superior court on the fourteenth day of October, 1893, entitled "*The People of the State of California* v. *The Pacific Bank, a corporation, et al.*," in which action it was decreed on November 3, 1893, that said bank was insolvent, etc., and enjoining it and its officers from transacting any further business.

The complaint in said action of *People* v. *Pacific Bank* alleged substantially the facts stated in the foregoing affidavit of Mr. Gerberding, and, in addition, specified particular acts of mismanagement and of losses sustained by the bank, and its insolvency.

The answer of the bank in that case denied all acts of fraud and mismanagement, admitted its insolvency, and alleged that the interest of the creditors and stockholders required that the bank should be enjoined from the transaction of any further business, and that its business and affairs should be closed under the provisions of the Bank Ccommissioners' Act. This answer, it was further alleged, was duly authorized by vote of the board of directors.

Appellant excepted to the reading of the said complaint, answer, and decree in support of said motion, upon the ground that he was not a party to said action, and was not bound by the proceedings therein.

The affidavits read by appellant in opposition to the motion did not deny that the Pacific Bank was insolvent

on the twenty-third day of June, 1893, which was prior
to the issuance of the attachment, nor that said bank
was incorporated under the act of 1862, providing for
the formation of corporations "for the accumulation
and investment of funds and savings" (Stats. 1892,
p. 199), but alleged that it conducted the business of a
commercial bank and no other, and advertised and
held itself out as "the oldest chartered commercial bank
on the Pacific Coast"; that the claim upon which his at-
tachment issued was a balance due him upon an ordi-
nary commercial deposit; and upon these facts appellant
contends that the property and assets of the bank were
properly subject to attachment, and that the court erred
in dissolving it; while counsel for respondent contend:
1. That the Pacific Bank is a savings bank; that the
act of 1862, under which it was organized, declared that
"the capital stock and assets of the corporation shall be
a security to depositors who are not stockholders," and
that such security is sufficient to prevent an attachment
under section 538 of the Code of Civil Procedure; and,
2. That at the time respondent moved to dissolve the
attachment the bank was in liquidation under the Bank
Commissioners' Act, and that the judgment of the supe-
rior court in the case of the *People ex rel. Bank Commis-
sioners* v. *Pacific Bank*, rendered November 3, 1893,
related back to the time the bank became insolvent,
viz., June 23, 1893, which was prior to the attachment.

Whether the Pacific Bank should be held to have
been a commercial bank or a savings bank is an im-
portant question, in some aspects, affecting the settle-
ment and adjustment of its affairs; but, so far as this
appeal is concerned, I think it immaterial, and there-
fore not necessary to be considered or decided; for, if
it were beyond doubt or question that it not only con-
ducted its business as a commercial bank, but was
chartered as such, I think the attachment was properly
dissolved.

Under the act creating a board of bank commission-
ers and prescribing their duties and powers (Stats.

1877–78, p. 740), and the amendments thereof (Stats. 1887, p. 90), the state not only requires all banks, including commercial as well as savings banks, to report twice each year, under oath, to said board, their financial condition, but through said board exercises the high prerogative power of visitation without notice, and of making an independent examination of its books, papers, bonds, and all securities, "to ascertain the condition of every such corporation, its solvency, its ability to fulfill all its obligations, and report its condition to the attorney general as soon as practicable after such examination." (Stats. 1887, p. 91, sec. 4.)

Section 11 of said act as amended (Stats. 1887, p. 91), further prescribing the powers and duties of said board and of the attorney general, and the mode of liquidation of insolvent banking corporations, is quoted in full in *People* v. *Superior Court*, 100 Cal. 111–14; and need not be inserted here. It will there be seen that if the commissioners find that the bank has been violating its charter or the law, or is conducting its business in an unsafe manner, they shall by order direct the bank to discontinue such practices, and, if the bank refuses to comply with such order, and if it shall appear to the commissioners that it is unsafe for such bank to continue to transact business, they shall notify the attorney general of such fact, who, after examination, in his discretion may commence suit to enjoin and prohibit the transaction of any further business; and if the court is of opinion that it is unsafe for the parties interested, or for such corporation, to continue to transact business, and that such corporation is insolvent, he shall grant the injunction and direct the bank commissioners to take such proceedings against such corporation as may be decided upon by its creditors. This section further fixes the time within which liquidation shall be accomplished, that the commissioners shall have a general supervisory control thereof, may extend the time for final settlement, shall designate the number of officers and employees necessary to close up the business of the corporation and fix

the salaries of the same, and imposes heavy penalties by fine or imprisonment, or both, upon any officer or employee of any insolvent corporation mentioned in the act if they shall disregard or refuse to obey the directions of the bank commissioners given in accordance with the provisions of the act.

It needs no argument to show that the exercise of the sovereign power of the state over such corporations in the manner above indicated is intended for the protection not only of the stockholders, but especially for the protection of depositors and all others transacting business with or through the bank. In *People* v. *Superior Court, supra,* certain creditors of the Pacific Bank, the respondent here, filed a petition in insolvency against said bank under the Insolvent Act of 1880, and the case there was an application on relation of the bank commissioners for a writ of prohibition to prevent the superior court from proceeding under the Insolvent Act against the bank. After quoting said section 11 of the Bank Commissioners' Act the court said:

" We have no doubt that this section was intended by the legislature to provide for every case involving the winding up of the business of a banking corporation, and that it necessarily supersedes the provisions of the Insolvent Act of 1880 so far as this class of corporations is concerned." This conclusion was approved in *Long* v. *Superior Court,* 102 Cal. 449.

The case of *People* v. *Superior Court, supra,* seems to me to be conclusive of the question involved in this case. If the Bank Commissioners' Act operates to take banks out of the operation of the Insolvency Act, the proceedings under which, though summary and expensive, result in the equal distribution of its assets among its creditors, it is equally clear that it was not intended that the moment a bank closed its doors its assets should be the prey of the first creditors who should secure the issuance of attachments, and thus permit its assets to be converted into money by a still more expensive process, and that the proceeds should

be applied to the payment in full of these attachments, leaving other creditors, who, by reason of distance or otherwise, should not be informed of the bank's condition, or be able to secure the prompt issuance of an attachment, wholly without a right to share in its assets.

The great care and supervision exercised by the state over banking corporations through the board of bank commissioners indicates a different purpose than that the commencement of proceedings by the state through the attorney general should be a mere signal to conveniently located creditors to absorb the bank's assets by means of writs of attachment to the exclusion of equally meritorious creditors less favorably located.   The direction of the statute is that if the court should be of the opinion that it is unsafe for the corporation to continue to transact such business, and that it is insolvent, that an injunction shall be issued, and thereupon " said judge shall further direct said commissioners to take such proceedings against such corporation *as may be decided upon by its creditors*"; thus clearly showing that the creditors—*all* the creditors—are interested in and affected by the proceedings in liquidation, and are to be equally protected.

Appellant contends, however, that the right of attachment is a positive statutory right, and that the Bank Commissioners' Act makes no provision for dissolving attachments levied before the machinery of the act was put in motion by the commencement of the action by the people.

But before the attachment was levied the bank had suspended and closed its doors.   The affidavits in support of the motion not only state that fact, but also that it was, in fact, insolvent, and these facts are not denied. Under these circumstances the right of attachment did not exist.   Section 21 of said Bank Commissioners' Act (Stats. 1877–78, p. 745) declares that: "All acts are hereby repealed in so far as they are inconsistent with the provisions of this act."   It requires no argument to show

that the right of attachment under the provisions of the Code of Civil Procedure is inconsistent with the machinery of the Bank Commissioners' Act, as well as with its obvious purpose and intent. The state never intended that after the continued exercise of its high prerogative powers for the safety of all depositors and creditors, as well as stockholders, that its purpose should be thwarted by the seizure of the assets of the bank by one or more creditors, perchance through the connivance of one of its officers or employees.

In the later case of *People's Home Savings Bank* v. *Superior Court*, 103 Cal. 27, a case involving the construction of the Bank Commissioners' Act, the court said:

"The attorney general is authorized to proceed against the corporation alone, and for the sole purpose, in effect, of winding up its business. In other words, he represents the interests of the people in a matter of public concern."

Appellant's exceptions to the complaint, answer, and decree in the case of the *People* v. *Pacific Bank* cannot be sustained. As the suit was by the people under a statute authorizing it, and for the purposes hereinbefore stated, the judgment declaring the bank insolvent is conclusive for all the purposes of the act, and binding upon appellant, so far at least as concerns his right to maintain his attachment, and the pleadings were properly read for the purpose of showing that the judgment of insolvency was rendered in a case within the statute. If it were otherwise, since the affidavit of Mr Gerberding that the bank was in fact insolvent on June 23d, and ever since remained so, was not controverted, the order dissolving the attachment might have been properly sustained without the evidence excepted to, and. if so, appellant was not prejudiced by its admission.

As our conclusion is based upon the force and effect of the Bank Commissioners' Act, and proceedings thereunder, a review of the numerous cases cited by appellant which do not refer to this statute could not be profitable.

The order appealed from should be affirmed, but without costs to either party, the parties having so stipulated.

VANCLIEF, C., and SEARLS, C., concurred.

For the reasons given in the foregoing opinion the order appealed from is affirmed, without costs to either party.        HENSHAW, J., McFARLAND, J., TEMPLE, J.

Hearing in Bank denied.