## Whitfield v. Dorman, Banking and Securities Commissioner.

(Decided June 6, 1933.)

W. T. DAVIS and E. P. NICHOLSON, Jr., for appellant.
JAMES H. JEFFRIES, JAMES W. SMITH and R. G. LOW for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE REES—Affirming.

This is a suit brought by James R. Dorman, banking and securities commissioner of the commonwealth of Kentucky, to enforce against a stockholder of a closed bank the double liability imposed by section 595 of the Kentucky Statutes.

The Citizens' Bank & Trust Company of Middlesboro closed its doors for business and went into liquidation on November 28, 1930. The defendant, Gailus Whitfield, owned 36 shares of the capital stock of the par value of $100. After taking possession of the bank for the purpose of liquidation, the banking and securities commissioner ascertained that its assets would be insufficient to pay its debts and liabilities, and that it would be necessary to make an assessment against the stockholders of 100 per centum of the par value of their stock. A showing to this effect was made to the Bell circuit court in a proper proceeding, and the circuit court entered an order directing the banking and securities commissioner to assess severally the shareholders of the Citizens' Bank & Trust Company the par value of the stock owned by each and to collect the assessment by demand or suit.

This suit was filed against Whitfield to recover $3,600, the par value of his stock, and he defended on the ground that he had paid an assessment of 100 per centum on the shares of capital stock of the bank owned by him pursuant to an assessment made as of August 19, 1926, to restore the impaired capital of the bank. It

appears from the pleadings that, prior to August 19, 1926, the capital of the bank had become impaired through defalcations of an employee, and that the banking commissioner of Kentucky, after making an investigation of the affairs of the bank, ordered the directors to make an assessment of 100 per centum on all outstanding shares of the capital stock of the bank amounting to the total sum of $50,000. The directors complied with the order of the banking commissioner, and made and collected the assessment, and the bank continued as a going concern until it closed on November 28, 1930. A demurrer to the defendant's answer was sustained by the trial court, and, upon his refusal to plead further, judgment was entered against him for the sum of $3,600.

On this appeal it is urged in his behalf that he discharged his double liability as provided in section 595 of the Statutes when he paid the 100 per centum assessment on his stock in 1926 to restore the impaired capital of the bank. The assessment of 1926 was made pursuant to section 165a-15 of the Statutes, which then read:

"Whenever it shall appear that the capital stock of any bank has been impaired, the banking commissioner shall notify such bank and each director thereof, to make such impairment good within thirty days, and it shall be the duty of the officers and directors of any bank receiving such notice from the banking commissioner immediately to call a special meeting of its stockholders for the purpose of making assessments on its stock sufficient to cover the impairment of its capital, payable in cash: Provided, That such bank may with the consent of the commissioner reduce its capital to the extent of the impairment, if such reduction will not place its capital below the amount required by law." Section 165a-15 is substantially the same as section 586, which was an act of 1893, except that the banking commissioner is substituted for the secretary of state. Section 595 of the Statutes, so far as it is pertinent to the question before us, reads:

"The stockholders of each bank organized under this article shall be individually responsible, equally and ratably, and not one for the other, for all contracts and liabilities of such bank to the extent of

the amount of their stock at par value in addition to the amount of such stock.''

These statutes deal with entirely different situations, and a payment under section 165a-15 does not absolve the stockholder from subsequent liability under section 595. The purpose of section 165a-15 is to enable a bank, the capital stock of which has become impaired, to continue as a going concern, and the assessment made against the stockholders to restore the impairment is primarily for the benefit of the bank itself and consequently of its stockholders, while the assessment authorized by section 595 is solely for the benefit of the bank's creditors.

The precise question presented by this appeal has never been before this court, but there are numerous decisions of other courts construing statutory and constitutional provisions similar to the provisions of sections 165a-15 and 595 of our Statutes. Section 6077 (4146), Compiled General Laws of Florida 1927, relating to making good impaired capital of a bank, and section 6059 (4128), Compiled General Laws of Florida 1927, relating to double liability of stockholders, correspond respectively to sections 165a-15 and 595 of our Statutes. In Russ v. Golson, 102 Fla. 865, 136 So. 506, 508, the Supreme Court of Florida had before it the question presented in the record before us. In holding that payments made by stockholders of a bank for the purpose of restoring the impaired capital did not absolve the stockholders from the double liability provision when the bank later became insolvent, the court said:

''Assessment of bank stock to make good impairment of capital and double liability of stockholders subserves entirely distinct and wholly different purposes. One is an incident of operation; the other is an incident of liquidation. * * * The obligations of the shareholders under the two sections are entirely diverse; and payments made under section 4146, Revised General Statutes of 1920, cannot be applied to the satisfaction of the individual responsibility secured by section 4128, Revised General Statutes of 1920.''

Section 595, Kentucky Statutes, substantially duplicates the language of the federal statute on the same

638

subject. Section 5151, U. S. Revised Statutes (12 USCA sec. 63). Section 5205 of the U. S. Revised Statutes (12 USCA sec. 55), provides that every national banking association whose capital stock shall have become impaired shall, within three months after receiving notice thereof from the Comptroller of the Currency, pay the deficiency in the capital stock by assessment upon the shareholders pro rata for the amount of the capital stock held by each.

In Delano v. Butler, 118 U. S. 634, 7 S. Ct. 39, 46, 30 L. Ed. 260, a stockholder in a national bank had paid a 100 per centum assessment upon the capital stock pursuant to section 5205 of the Revised Statutes. The bank later became insolvent and went into liquidation, and an assessment of 100 per centum upon the capital stock was made pursuant to section 5151 of the Revised Statutes. The stockholder resisted payment upon the ground that he had paid an assessment under section 5205, and that this absolved him from the double liability provided by section 5151. The defense was disallowed, and in the course of the opinion it was said:

"The assessment as made under section 5205 is voluntary, made by the stockholders themselves, paid into the general funds of the bank as a further investment in the capital stock, and disposed of by its officers in the ordinary course of its business. It may or may not be applied by them to the payment of creditors, and in the ordinary course of business certainly would not be applied, as in cases of liquidation, to the payment of creditors ratably; whereas, under section 5151 the individual liability does not arise, except in case of liquidation, and for the purpose of winding up the affairs of the bank. The assessment under that section is made by authority of the comptroller of the currency, is not voluntary, and can be applied only to the satisfaction of the creditors equally and ratably. If the claim in the present case were allowed, it would follow that in every case payments made by stockholders, for the purpose of restoring the impaired capital, would be considered as credits on the ultimate individual responsibility of shareholders, and the whole efficiency of the provisions of section 5151 for the protection of the creditors of the company at the time of liquidation would be destroyed. The

obligations of the shareholders under the two sections are entirely diverse, and payments made under section 5205 cannot be applied to the satisfaction of the individual responsibility secured by section 5151.''

To the same effect are Duke v. Force, 120 Wash. 599, 208 P. 67, 23 A. L. R. 1354; Citizens' Bank of Lane v. Needham, 120 Kan. 523, 244 P. 7, 45 A. L. R. 1202; Andrew v. Farmers' Trust & Savings Bank, 204 Iowa, 243, 213 N. W. 925, 56 A. L. R. 521; Andrews v. State ex rel. Blair, 124 Ohio St. 348, 178 N. E. 581, 83 A. L. R. 141; Baird v. Eidsvig, 59 N. D. 484, 230 N. W. 721; Reed v. Mobley, 172 Ga. 116, 157 S. E. 321; Andrew v. People's State Bank, 211 Iowa, 649, 234 N. W. 542; Smith v. Goldsmith, 50 S. D. 3, 207 N. W. 977; Michie on Banks and Banking, vol. 2, sec. 163, p. 193. In all of these cases statutes similar to ours were construed, and in each instance it was held that stockholders were not discharged from their statutory double liability by the payment of an assessment made and used for the purpose of restoring impaired capital. An assessment made to restore impaired capital is for the purpose of keeping the bank open, and is for the benefit of the stockholders, while the assessment made after the bank has gone into liquidation is solely for the benefit of the bank's creditors.

In the instant case, the payment by appellant of the assessment made in 1926 to restore the impaired capital did not absolve him from double liability under section 595 of the Statutes when the bank closed its doors in 1930.

The judgment is affirmed.