MARSHALL COUNTY BANK *v.* WHEELING DOLLAR SAVINGS
& TRUST COMPANY

(No. 8580)

*and*

MARSHALL COUNTY BANK *v.* MARY K. CROWTHER

(No. 8581)

Submitted September 28, 1937.  Decided November 9, 1937.

*A. C. McNell, Lloyd Arnold* and *Walter A. McGlumphy,* for plaintiffs in error.

*James T. Miller* and *Martin Brown,* for defendant in error.

HATCHER, JUDGE:

These proceedings are several notices of motions for judgment against stockholders of a bank for deficiencies after sales of their stock on a purported assessment to repair capital. Each proceeding was tried by the court in lieu of a jury, upon a like agreed statement of facts, and each resulted in a judgment for the bank.

Each statement submits the following stipulations. The bank has been engaged in the banking business since 1881. On October 6, 1931, the bank placed a restriction upon withdrawals of savings and time deposits, and "on the ground of necessity" continued the restriction until March 1, 1933, when it was directed by the State Commissioner of Banking to pay only five per cent of deposits until further order. The bank continued to transact business until May 22, 1933, when, because of alleged "divers difficulties existing between the plaintiff and others" (difficulties not disclosed), the bank was turned over to the commissioner, at his request, for "analysis of its assets and liabilities * * * for the purpose of rehabilitation * * * if such could be accomplished", and was "conducted directly" by his department until September 7, 1933. At that date "with a view to further progress in the rehabilitation" of the bank, the commissioner placed it in the hands of a receiver. It remained in his charge (though how handled is not stated) until November 5, 1935, when he returned it to its board of directors. In the meantime, a plan *to reorganize and reopen* it had been submitted by the board to and approved by the commissioner, which

provided for a mandatory stock assessment of $50.00 per share. The board levied the assessment November 20, 1935, the defendant failed to pay, and defendant's stock was sold, resulting in the assessment deficiency, for which recovery is sought. The bank "was reopened for the transaction of the general banking business * * * unrestricted", February 15, 1936.

Code, 31-8-14, makes the stockholders of a bank personally liable to it for an assessment to restore impaired capital. The Constitution, Article XI, section 6, makes the stockholders of a bank personally liable to its creditors "to an amount equal to their respective shares * * * for all its liabilities accruing while they are such stockholders." Dissipated or frozen capital is a necessary condition of insolvency; but the impairment of capital referred to in the statute is a substantially weakened financial condition not amounting to insolvency. "An impairment of capital does not mean insolvency." *People* v. *Gould,* 345 Ill. 288, 178 N. E. 133, 143. Each liability imposed on the stockholders serves a different purpose and is differently imposed. The obligation to repair capital is for the specific purpose of conserving the integrity of the bank as a going concern, and is enforced by the bank's directors. Their lawful power to do this exists only during solvency, since, during insolvency, the bank has no operating entity, and they do not represent it or have authority over its affairs. They are, by law, converted into trustees for the bank's creditors. *Lamb* v. *Pannell's Admr.,* 28 W. Va. 663, 666; *Arnold* v. *Knapp,* 75 W. Va. 804, 811, 84 S. E. 895. The Commissioner of Banking himself is not authorized to compel an assessment for impaired capital. He can only give the bank notice to repair and upon its failure to do so, place a receiver in charge. *State* v. *Bank,* 115 Neb. 776, 214 N. W. 933; *Bank of National City* v. *Johnson,* 133 Cal. 185, 65 P. 383; *Smith* v. *Mobley,* 166 Ga. 195, 143 S. E. 116. The liability (under the Constitution) to the creditors is to them alone and not to the bank or for its benefit. *Baird* v. *Eidsvig,* 59 N. D. 484, 230 N. W. 721, 725. Hence payment of an assessment to repair capital will not be credited on the superadded liability to creditors. *Leach* v. *Bank,* 203

Iowa 1052, 213 N. W. 772; *Blackert* v. *Lankford*, 74 Okla. 61, 176 P. 532; *Delano* v. *Butler*, 118 U. S. 634, 653-4, 7 S. Ct. 39, 30 L. Ed. 260; 7 Am. Juris., subject Banks, section 103. The latter is imposed automatically by the Constitution when the bank cannot pay the creditors in the ordinary course of business, and is enforced under the orders of the banking commissioner. *Pyles* v. *Carney*, 85 W. Va. 159, 101 S. E. 174; *Finnell* v. *Bane*, 93 W. Va. 697, 117 S. E. 549. Thus each liability is exclusive as well as different, and "never the twain shall meet." "Assessment of bank stock to make good impairment of capital, and double liability of stockholders, subserve entirely distinct and wholly different purposes. One is an incident of operation; the other is an incident of liquidation." *Russ* v. *Golson*, 102 Fla. 865, 136 So. 506, 508. Accord: *Citizens Bank* v. *Needham*, 120 Kan. 523, 244 P. 7, 45 A. L. R. 1202, 1208.

The agreed statements do not disclose the precise condition of the bank when the instant assessment was made. The receivership, alone, does not define that condition, since under Code, 31-8-32 the commissioner has authority to appoint a receiver for a bank (1) when its capital is impaired and after notice it does not repair promptly, and (2) when it is insolvent. The liability of defendants, if any, cannot be enforced until the condition be shown from which liability arises. "Conditions precedent to the statutory liability of a stockholder of a bank for an assessment to make good an impairment of capital must be satisfied before resort may be had to any form of remedy." *Shriver* v. *Bank*, 285 U. S. 467, 52 S. Ct. 430, 76 Law Ed. 884.

The bank, without regard to its exact status before reorganization, contends that the assessment is lawful under the plenary powers conferred on the commissioner by 31-8-29 to reorganize a liquidating bank and to represent its stockholders. We have held that this statute must be liberally construed. *Timmons* v. *Trust Co.*, 114 W. Va. 618, 173 S. E. 79. But that, of course, meant construction, though liberal, within the law. It did not mean that the commissioner could bind a dissenting stockholder to provisions not within his corporate obligations,

since that would be unconstitutional. Postulating that the commissioner could have enforced in full against the defendants their constitutional superadded liability and instead, imposed a lesser amount, the bank would justify the assessment as "fair and equitable." That is not a test of its validity. The liability of defendants is contractual. Zollman, Banks and Banking, secs. 1592, 1622; Michie, *idem*, sec. 28; 7 Am. Juris., subject Banks, sec. 98. The test, therefore, is whether the defendants contracted to pay such an assessment. In purchasing stock they contracted to pay assessments only (a) to the bank to repair its capital as a going concern, and (b) to the bank's creditors after its insolvency. Since the instant assessment seemingly is to provide new capital instead of to repair old, and assuredly is to revive a closed business instead of to stabilize a going one, its relation to the liability to restore impaired capital is not apparent. Since the assessment is to be paid to the bank and not to its creditors, the assessment cannot be related to the superadded liability to creditors.

The bank contends that in any event, the assessment is now ineluctable, by reason of 31-8-43, enacted in 1935, which purports to bind a dissenting stockholder to a corporate reorganization sponsored by two-thirds of the stockholders and approved by the commissioner, as was done herein. The several dates when defendants acquired their stock do not appear, but presumably their purchases ante-dated 1935. We are cognizant that since 1863 our legislature has reserved the power to amend the corporate contracts of stockholders. However, that power may be exerted only to promote the corporation in the interest of the public, and even then the rights of minority stockholders must be fairly preserved. The power is remedial, not oppressive. *Looker* v. *Maynard*, 179 U. S. 46, 52, 21 S. Ct. 21, 45 L. Ed. 79. It may not be exercised, directly or indirectly, to increase materially the liability of an unwilling stockholder. That power "should be restricted to those amendments only in which the state has a public interest. Any attempt to use this power of amendment for the purpose of authorizing a majority of the stockholders to force upon the minority a material change in

the enterprise is contrary to law and the spirit of justice. * * * the power to make a new contract for the stockholders is not thereby given to the legislature. The legislature may repeal the charter, but cannot force any stockholder into a contract against his will." Cook on Corporations (8th Ed.), section 501. Accord: *Yeaton* v. *Bank*, 21 Gratt. (Va.) 593, 599-600; *Woodbine Sav. Bank* v. *Shriver* (Iowa), 226 N. W. 374, 377; *New Orleans, J. & G. N. R. Co.* v. *Harris*, 27 Miss. 517; *Snook* v. *Imp. Co.*, 83 Ga. 61, 9 S. E. 1104; *Coffin* v. *Rich*, 45 Me. 507, 71 Am. Dec. 559; *Zabriskie* v. *R. Co.*, 18 N. J. Eq. 178, 90 Am. Dec. 617; *Garey* v. *Mining Co.*, 32 Utah 497, 91 P. 369, 12 L. R. A. (N. S.) 554; Morowitz, Corporations, secs. 1097-8; Beach, Private Corporations, sec. 40; Clark and Marshall, Private Corporations, sec. 631b; Thompson's Commentaries on Corporations, sec. 5417.

The foregoing is not to be taken as opposing the doctrine, that for the benefit of the greater number concerned, and in the public interest, a dissenting stockholder's statutory liability may lawfully "be transmuted into another form of substantial assurance". *Dunn* v. *Love*, 172 Miss. 342, 155 So. 331, 334, 92 A. L. R. 1323, 1328. However, as against those who acquired stock prior to 1935, that doctrine would not support a reorganization assessment under 31-8-43, if it was not a transmutation of either the statutory or the constitutional liability of the stockholder, but was another liability in addition thereto. When the doctrine of estoppel does not apply, it is generally held that an unwilling stockholder cannot be compelled to participate in the reorganization of an insolvent bank, whereby his existing corporate relations would be materially disturbed. *Fors* v. *Thoman*, 267 Mich. 148, 255 N. W. 297; *Garey* v. *Mining Co., supra; Woodbine Sav. Bank* v. *Shriver* (Iowa), 226 N. W. 374, 377; *Miller* v. *State*, 15 Wall. 478, 498, 21 L. Ed. 98; Braver, Liquidation of Fin. Insts., sec. 278; Annotation, 89 A. L. R. 770.

The judgments herein are not warranted by the record. We are of opinion, therefrom, that evidence, decisive of the issues involved, exists. Under *Cunningham* v. *Donelson*, 105 W. Va. 536, 143 S. E. 345, the several judg-

ments and findings of the court are reversed and the cases remanded for further proceedings.

*Reversed; remanded.*